#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE SOUTHERN DISTRICT OF ALABAMA
#### SOUTHERN DIVISION

STEPHENIE N. BOSARGE, :

    Plaintiff, :

vs. : CA 16-0382-C

NANCY A. BERRYHILL, :
Acting Commissioner of Social Security,[1]
    :
    Defendant.


### MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability and disability insurance benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 14 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings."); *see also* Doc. 15 (endorsed order of reference).) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of counsel at the February 16, 2017 hearing before the Court, it is determined that the Commissioner's decision

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Berryhill is substituted for Carolyn W. Colvin as the proper defendant in this case.

denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[2]

## I. Procedural Background

Plaintiff protectively filed an application for disability insurance benefits on November 21, 2012, alleging disability beginning on or about July 17, 2012. (*Compare* Tr. 22 & 24 *with* Tr. 140.) Her claim was initially denied on March 8, 2013 (Tr. 73-75) and, following plaintiff's request for a hearing before an Administrative Law Judge (*see* Tr. 81), a hearing was conducted before an ALJ on March 12, 2014 (Tr. 34-60). On September 26, 2014, the ALJ issued a decision finding that the claimant was not disabled and, therefore, not entitled to disability insurance benefits. (Tr. 22-29.) On October 29, 2014, the plaintiff appealed the ALJ's unfavorable decision to the Appeals Council (Tr. 18) and, the Appeals Council granted Bosarge's request for review on April 28, 2016 (Tr. 136-139). The Appeals Council agreed with the ALJ's analysis respecting all relevant steps of the sequential evaluation process—that is, steps 1 through 4—and only disagreed with the ALJ's finding that Bosarge last met the insured status requirements of the Social Security Act on September 30, 2013. (*See* Tr. 5.) Therefore, the Appeals Council made "new" findings 1 through 7 (*see id.* at 5-6), in order to properly reflect that plaintiff last met the insured status requirements of the Act on December 31, 2013 (*id.*). In other words, "[e]xcept for the finding regarding the date the claimant last met the insured status requirements of the Act, the Appeals Council adopt[ed] the findings

---

[2] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 14 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

from the Administrative Law Judge's decision dated September 26, 2014, for the period from the alleged onset date, July 17, 2012, through December 31, 2013." (*Id.* at 5.)

In light of the foregoing, the undersigned simply sets forth the following relevant portion of the ALJ's analysis, that is, that portion of her decision immediately following her residual functional capacity assessment that Bosarge can perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a) (Tr. 25).

> [T]he undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.
>
> In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)— i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.
>
> The claimant is a 57-year-old female who has a high school education and lives in a house with her husband. The claimant alleged she is unable to work due to the listed above impairments. The claimant testified she has three ruptured discs and that she was recommended a surgery. She has arthritis in her spine, numbness in her arms and legs, headaches, difficulty concentrating, fatigue, and problems sleeping at night. She stated she takes pain medication, which is somewhat helpful, but makes her drowsy. The claimant asserted she can lift only one to two pounds and sit for only 10 to 15 minutes. She stated she has good days and bad days with only one to two good days per week. . . . After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the

intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

The claimant has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The statements in the record indicate she is independent for all self-care activities, performs a variety of daily activities, and interacts with others on a regular basis. The claimant has described her daily activities that included watching television, using her computer, preparing her own simple meals, cooking, doing laundry, washing dishes, reading, and crocheting. She drives a car, shops in stores, goes to church, and spends time with her grandchildren weekly. The claimant indicated she can go out alone and is able to take care of her own finances. She goes outside daily and gets along well with family, friends, and authority figures. She does not have difficulty focusing or problems completing tasks. The claimant indicat[ed] she can follow spoken and written instructions "very well". Additionally, the claimant reported to the consultative examiner in February 2013 that she was able to perform her activities of daily living at home and was able to drive.

It appears that, despite the claimant's impairments, she has engaged in a somewhat normal level of daily activity and interaction. The undersigned notes that the physical and mental capabilities requisite to performing many of the tasks described above as well as the social interactions replicate those necessary for obtaining and maintaining employment.

In terms of the claimant's alleged degenerative disc disease, although imaging reports produced significant findings, physical examinations and consultative examinations objective findings do not support the claimant's allegations of disability. Moreover, the claimant indicated to the consultative examiner that she stopped working due to [the] business closing and being laid off. She reported in April 2014 to another consultative examiner that her last job "played out" and that she was unable to get another position, which is inconsistent with the claimant's allegations of not being able to work due to her impairments.

The claimant was treated at Encore Rehabilitation, Inc. for cervical spondylosis with probable left upper extremity radiculitis and left shoulder impingement. The claimant underwent physical therapy and cervical epidural steroid injection, which provided a temporary relief. Records from Family Medical, PC show [] treatment for neck pain and right shoulder pain. The claimant was treated conservatively with anti-inflammatories, muscle relaxers, and pain medication, such as Mobic, Aleve, Flexeril, and Lortab. X-ray studies of the cervical spine revealed lipping C5-C6 and decrease in the intervertebral space suggestive of degenerative disc disease. The claimant was recommended to apply moist heat to the top of the shoulder and the side of the neck four times a day for

4

20 minutes followed by gentle stretching. She reported on May 16, 2013 that Lortab and Flexeril were effective in controlling her symptoms.

Records from Costal Neurological Institute contain the evidence of treatment for neck pain. MRI studies of the cervical spine on July 10, 2012 showed degeneration of all the cervical discs with most prominent circumferential spondylosis from C4-C5 through C6-C7. There were mild central protrusions at these levels with resulting spinal stenosis, which was most prominent centrally at C5-C6. Bilateral foraminal stenosis was present at these levels. Anterior cervical discectomy and fusion was recommended to the claimant. However, the records show that the claimant's physical examinations were essentially normal. There was no clubbing, cyanosis, edema or deformity in the claimant's extremities and no spinal deformity or scoliosis noted. The claimant had normal posture and gait as well as full range of motion in all joints. Strength in the upper and lower extremities was also normal.

On February 25, 2013, Eyston A. Hunte M.D. completed a consultative physical examination of the claimant and reported that the claimant's complaints consisted of neck pain and shoulder pain radiating to her arms, hands, and fingers. She reported that she was unable even to hold a cup. However, physical examination was essentially unremarkable. The claimant had normal strength in upper and lower extremities, and there was no motor or sensory deficits noted. Deep tendon reflexes were normal (+4) and even bilaterally. The claimant had normal range of motion in her cervical and dorsolumbar spine as well as all joints of all extremities. Straight leg raising test was 60 degrees bilaterally in supine position and 90 degrees bilaterally in sitting position. Dr. Hunte noted that the claimant was able to dress, undress, and get on and off the examination table without any difficulty. She ambulated normally and did not use any assistive device. The claimant reported she was able to perform her activities of daily living at home and was able to drive.

. . .

As for the opinion evidence provided in this case, on April 22, 2014, Andre J. Fontana, M.D. completed a consultative orthopedic evaluation of the claimant and reported that the claimant had decreased range of motion in her cervical and lumbar spine. X-ray studies of the shoulder and cervical spine revealed degenerative disk disease and disk space collapse at C5-C6 and C6-C7. X-ray of the claimant's lumbar spine showed right-sided scoliosis with degenerative arthritic changes and degenerative disk disease with large anterior spurs at the L1-L2l L2-L3, L3-L4, and L4-L5 levels with some degenerative narrowing of the disk at L5-S1. Dr. Fontana concluded that the claimant had severe degenerative disk disease of the thoracic and lumbar spine with a history of some probable cervical radiculopathy. Nevertheless, the claimant had good range of motion in [] all joints of all extremities. Sensory function was only slightly decreased in the fingertips. The claimant had good grip strength (5/5) bilaterally, and

5

> Tinel's sign was negative. Straight leg raising test was 90 degrees in a sitting position and 80 degrees in supine position.
>
> Dr. Fontana opined that the claimant can lift up to 20 pounds occasionally, sit eight hours in an eight-hour workday, stand for two hours in an eight-hour workday, and walk for two hours in an eight-hour workday. He indicated that the claimant can perform only occasional bending, no kneeling, no crawling, no climbing, no operating of arm controls, no pushing or pulling on arm controls, and no operating of foot controls. Dr. Fontana is not a treating medical source and his opinion is based on a one-time examination, which is only a snapshot of the claimant's functioning at the time of the examination. Although imaging reports produced significant findings, physical examinations in the record did not reveal the type of limitations to support the claimant's allegations of disability. Furthermore, Dr. Fontana's opinion is inconsistent with substantial activities of daily living reported by the claimant; therefore, the opinion is given little weight.
>
> . . .
>
> In summary, after reviewing the clinical and objective findings in addition to the factors contained in SSR 96-7p, the undersigned finds that claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms but the statements concerning the intensity, duration and limiting effects of the claimant's symptoms are not entirely credible and are inconsistent with the totality of the evidence. As discussed above, the claimant is independent for all self-care activities and performs significant activities of daily living. She drives a car, shops in stores, and attends church. Although imaging reports produced significant findings, physical examinations in the record did not reveal the type of limitations to support the claimant's allegations of disability. Additionally, the claimant indicated that the main reasons she stopped working [were] that the business closed and that she was laid off and not due to her impairments.

(Tr. 25, 26-27, 27, 28 & 28-29 (internal citations omitted).)

## II. Standard of Review and Claims on Appeal

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

> to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform h[is] past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Security*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[3] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Once the claimant establishes that she cannot perform her past relevant work, it becomes the Commissioner's burden to prove that the claimant is capable, given her age, education and work history, of engaging in another kind of substantial gainful employment, which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she retains the residual functional capacity to perform the full range of sedentary work and, therefore, her past relevant work as a bookkeeper and office manager, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision."

---

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

*Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[4] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Bosarge asserts two reasons why the Commissioner's decision to deny her benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ committed reversible error, in violation of 20 C.F.R. § 404.1545 and SSR 96-8p, in that her residual functional capacity ("RFC") assessment is not supported by substantial evidence; and (2) the ALJ committed reversible error, in violation of SSR 96-7p, by failing to address, much less consider, the impact on her ability to work "wrought" by the side effects of her medications. The undersigned considers these claims together within the context of the ALJ's RFC assessment. (*See* Doc. 9, at 7 ("Side effects of medications are also relevant in determining a Plaintiff's residual functional capacity.").)

Initially, the Court notes that the responsibility for making the residual functional capacity determination rests with the ALJ. *Compare* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.") *with, e.g., Packer v. Commissioner, Social Security Admin.*, 542 Fed. Appx. 890, 891-892 (11th Cir. Oct.

---

[4] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

29, 2013) (per curiam) ("An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (internal citation omitted)). A plaintiff's RFC—which "includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers and work pressure[]"—"is a[n] [] assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Watkins v. Commissioner of Social Security*, 457 Fed. Appx. 868, 870 n.5 (11th Cir. Feb. 9, 2012) (citing 20 C.F.R. §§ 404.1545(a)-(c), 416.945(a)-(c)). Here, the ALJ's RFC assessment consisted of the following: "**After careful consideration of the entire record, the undersigned finds that . . . the claimant had the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a).**" (Tr. 25 (emphasis in original).)

To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has "'provide[d] a sufficient rationale to link'" substantial record evidence "'to the legal conclusions reached.'" *Ricks v. Astrue*, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012) (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)); *compare id. with Packer v. Astrue*, 2013 WL 593497, *4 (S.D. Ala. Feb. 14, 2013) ("'[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other

9

requirements of work.'"), *aff'd,* 542 Fed. Appx. 890 (11th Cir. Oct. 29, 2013); *see also Hanna v. Astrue*, 395 Fed. Appx. 634, 636 (11th Cir. Sept. 9, 2010) (per curiam) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review. . . . Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)).[5] However, in order to find the ALJ's RFC assessment supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician. *See, e.g., Packer, supra,* 2013 WL 593497, at *3 ("[N]umerous court have upheld ALJs' RFC determinations notwithstanding the absence of an assessment performed by an examining or treating physician."); *McMillian v. Astrue*, 2012 WL 1565624, *4 n.5 (S.D. Ala. May 1, 2012) (noting that decisions of this Court "in which a matter is remanded to the Commissioner because the ALJ's RFC determination was not supported by substantial and tangible evidence still accurately reflect the view of this

---

[5] It is the ALJ's (or, in some cases, the Appeals Council's) responsibility, not the responsibility of the Commissioner's counsel on appeal to this Court, to "state with clarity" the grounds for an RFC determination. Stated differently, "linkage" may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the Commissioner's decision. *See, e.g., Durham v. Astrue*, 2010 WL 3825617, *3 (M.D. Ala. Sept. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'" (quoting *Hanna*, 395 Fed. Appx. at 636 (internal quotation marks omitted))); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ ***could have*** relied . . . . There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion]. However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support. Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct." (emphasis in original)); *Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must . . . affirm the ALJ's decision only upon the reasons he gave.").

Court, but not to the extent that such decisions are interpreted to require that substantial and tangible evidence must—in all cases—include an RFC or PCE from a physician" (internal punctuation altered and citation omitted)); *but cf. Coleman v. Barnhart*, 264 F.Supp.2d 1007 (S.D. Ala. 2003).

In this case, even if this Court was to find that the ALJ properly accorded only little weight to the RFC opinion of Dr. Andre Fontana, the ALJ's RFC assessment cannot be found to be supported by substantial evidence inasmuch as the ALJ does not explain, when summarizing the evidence of record, how the medical evidence supports each component of her RFC assessment. After all, in determining that plaintiff is capable of performing the full range of sedentary work (Tr. 25), the ALJ is obviously asserting that Bosarge can perform all requirements set forth in the definition of sedentary work contained in the regulations, *see* 20 C.F.R. § 404.1567(a) (2016) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."), as well as have "good use of the hands and fingers for repetitive hand-finger actions[,]" SSR 83-10. And, here, the ALJ did not explain in any manner how the clinical findings and Bosarge's performance of certain activities of daily living[6] "equate" to a finding that she would have "good use of

---

[6] The manner in which the ALJ describes plaintiff's daily activities bears little resemblance to the manner in which Bosarge described her daily activities. (*Compare* Tr. 26 *with* Tr. 46-47, 49-50 & 179-186.) In particular, the ALJ described plaintiff's daily activities in a manner which would lead the reader to believe that she performed them without any limitation (*see* Tr. 26 ("The claimant has described her daily activities that included watching television, using her computer, preparing her own simple meals, cooking, doing laundry, washing dishes, reading and crocheting. She drives a car, shops in stores, goes to church, and spends time with (Continued)

the hands and fingers for *repetitive* hand-finger actions[,]" particularly in light of the clear clinical finding by Dr. Fontana that plaintiff's "[s]ensory" was "slightly decreased in the tips of the fingers[,]" (Tr. 286) and the significant findings on MRI—degeneration of all cervical discs, with most prominent circumferential spondylosis from C4-5 through C6-7, and bilateral foraminal stenosis at C4-5 through C6-7 (Tr. 223)—which are consistent with her reports to several doctors of numbness and tingling (Tr. 219, 224, 238 & 285; *see also* Tr. 218 (noting C5-6 central "hnp with cord compression")). Indeed, Dr. Donald Tyler, plaintiff's treating neurologist for a period of time, specifically noted that the findings on MRI were consistent with plaintiff's symptoms (Tr. 218) and recommended that surgery be conducted to reduce the risk of a spinal cord injury in light of clear cord compression (Tr. 221). Accordingly, the undersigned finds that the ALJ's RFC assessment fails to provide an articulated linkage to the medical evidence of record,[7] and, therefore, this cause need be remanded to the Commissioner of Social

---

her grandchildren weekly.")); however, it is clear plaintiff does not have an unlimited ability to perform these activities inasmuch as she specifically testified that it takes her the balance of a day to unload the dishwasher (Tr. 47), she does not crochet anymore (*id.*) and even when she did she could only hold the crochet needle for a short period of time (Tr. 183), she only shops once a month for one hour (Tr. 182 & 183), her simple meals consist primarily of sandwiches and cereal and she requires substantial assistance from her husband if she cooks on the stove (*see* Tr. 181), folding clothes is difficult (Tr. 182), she drives only "locally" because of limitations on turning her head (Tr. 182), she experiences difficulty in buttoning clothes or putting things over her head (Tr. 180), raising her arms above her head to wash her hair exhausts her (*id.*), and though she knows how to operate a computer she uses it for only short periods because it causes pain in her neck and shoulders (*compare* Tr. 50 *with* Tr. 186). Thus, plaintiff's daily activities are not as wide-ranging as the ALJ suggests and, certainly, her testimony—particularly regarding her limited use of a computer, inability to crochet, and difficulties with buttoning and washing her hair, etc.—betrays no suggestion that she would have "good use of the hands and fingers for *repetitive* hand-finger actions."

[7] The linkage requirement is simply another way to say that, in order for this Court to find that an RFC determination is supported by substantial evidence, ALJs must "show their work" or, said somewhat differently, show *how* they applied and analyzed the evidence to determine a plaintiff's RFC. *See, e.g., Hanna*, 395 Fed. Appx. at 636 (an ALJ's "decision [must] provide a meaningful basis upon which we can review [a plaintiff's] case"); *Ricks*, 2012 WL (Continued)

Security for further consideration not inconsistent with this decision. Stated somewhat differently, the ALJ has failed to provide this Court with sufficient reasoning for determining that the proper legal analysis has been conducted.[8]

---

1020428, at *9 (an ALJ must "explain the basis for his decision"); *Packer*, 542 Fed.Appx. at 891-892 (an ALJ must "provide *enough reasoning* for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole[]" (emphasis added)).  Thus, by failing to  "show his work," the ALJ has not provided the required "linkage" between the record evidence and his RFC determination necessary to facilitate this Court's meaningful review of his decision.

[8]     Relatedly, the Court also agrees with plaintiff that the ALJ erred in failing to address, much less consider, the effect on her ability to work caused by medication side effects. For her part, the ALJ made reference to Bosarge's hearing testimony that her pain medication makes her drowsy (Tr. 25; *compare id. with* Tr. 43-44 & 48-49 (plaintiff's testimony that she takes up to 4 Lortab 10 milligram tablets each day and within an hour of taking each tablet she has to lay down for about an hour)); however, the ALJ makes no further mention of plaintiff's medication side effects testimony and, certainly, makes no finding regarding "the effects of the medications on the ability to work" or otherwise reject Bosarge's testimony in this regard. *Cf. Leiter v. Commissioner of Social Security Administration,* 377 Fed.Appx. 944, 949 (11th Cir. May 6, 2010) ("[W]hen there is evidence in the record that the claimant is taking medication, and it is conceivable that the 'side effects of medication could render a claimant disabled or at least contribute to disability,' the ALJ has an obligation to elicit testimony *or make findings on the effects of the medications on the ability to work* as part of the overall duty to fully develop the record." (emphasis supplied)). And, given that plaintiff's testimony in this regard is believable from the standpoint that one of the common side effects of Lortab is drowsiness, *see* http://www.rxlist.com/lortab-10-side-effects-drug-center.html (last visited, March 8, 2017, at 10:51 a.m.), this Court finds that it was peculiarly the responsibility of the ALJ, not this Court on appeal, to evaluate the credibility of Bosarge's medication side effects testimony. *Compare Robinson v. Astrue,* 365 Fed.Appx. 993, 998 (11th Cir. Feb. 19, 2010) ("The ALJ properly supported his credibility determination by noting, among other things, that Robinson complained at the hearing about medication side-effects, but that she had not complained of these side effects to her treating physicians . . . .") and *Swindle v. Sullivan,* 914 F.2d 222, 226 (11th Cir. 1990) ("Ms. Swindle also argues that the many medications she is taking have severe side effects that the ALJ failed to take into consideration. However, the ALJ noted that Ms. Swindle did not complain of side effects, with the exception that she felt that one medication might be giving her headaches, and the record does not disclose any concerns about side effects by the several doctors who examined and treated her. The *ALJ's determination that side effects from medication did not present a significant problem* is therefore supported by substantial evidence." (emphasis supplied)) *with, e/.g., Davison, supra,* 370 Fed.Appx. at 996 (noting that courts are precluded from deciding the facts anew or re-weighing the evidence). In other words, this Court declines the Commissioner's invitation to re-weigh/weigh the evidence (*see* Doc. 10, at 2-3) and make a finding/determination that the ALJ was required to make in the first instance regarding the credibility of plaintiff's medication side effects testimony.

## CONCLUSION

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 14th day of March, 2017.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**